IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MIKE YOUNG INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>**Plaintiff,**<br><br>v.<br><br>CAESARS ENTERTAINMENT, INC.<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Mike Young, individually and on behalf of all others similarly situated, who respectfully brings this action seeking judgment for damages against Defendant Caesars Entertainment, Inc.

Casino operators enter into hundreds of thousands of transactions a day. When a casino starts taxing its players by refusing to refund cash change, it racks up millions of dollars. Defendant Caesars Entertainment, Inc. is liable to thousands of its casino players for short-changing them.

### PARTIES

1.

Plaintiff Mike Young is an individual of the full age of majority domiciled in Shreveport, Louisiana.

Defendant Caesars Entertainment, Inc. is a Delaware corporation operating the following casino properties in the United States: Caesars Suites Las Vegas, Horseshoe Las Vegas, Caesars Palace, The Linq Hotel and Experience, The Cromwell, Flamingo Las Vegas, Bally's Las Vegas, Harrah's Las Vegas, NOBU Hotel, Paris Las Vegas, Planet Hollywood, Rio All-Suite Hotel &

Casino, Caesars Atlantic City, Caesars Suites Atlantic City, Harrah's Resort Atlantic City, Tropicana Atlantic City, The Row, Eldorado Resort Casino, Silver Legacy Resort Casino, Circus Circus Reno, Caesars Republic Scottsdale, Harrah's Ak-Chin, Harrah's Resort Southern California, Harrah's Northern California, Horseshoe Black Hawk, Lady Luck Casino Black Hawk, Harrah's Pompano Beach, Isle Casino Pompano, Grand Victoria Casino Elgin, Harrah's Joliet, Harrah's Metropolis, Horseshoe Hammond, Horseshoe Indianapolis, Harrah's Hoosier Park, Caesars Southern Indiana, Harrah's Council Bluffs, Horseshoe Council Bluffs, Isle Casino Hotel Bettendorf, Isle Casino Hotel Waterloo, Mid-America Center, Harrah's New Orleans, Caesars New Orleans, Horseshoe Lake Charles, Horseshoe Bossier City, Horseshoe Baltimore, Harrah's Gulf Coast, Horseshoe Tunica, Isle of Capri Lula, Trop Greenville, Harrah's Kansas City, Isle of Capri Casino Hotel Boonville, Horseshoe St. Louis, Harrah's Lake Tahoe, Harveys Lake Tahoe, Harrah's Laughlin Beach Resort & Casino, Tropicana Laughlin, Harrah's Cherokee, Harrah's Cherokee Valley River, Eldorado Scioto Downs, Harrah's Philadelphia Casino and Racetrack, Caesars Virginia, Caesars Palace Dubai, Caesars Windsor, The Residences at Caesars Palace.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332. Young is a citizen of Louisiana because he is domiciled in Shreveport, Louisiana Defendant is a citizen of Delaware and Nevada because it is incorporated in Delaware and its principal place of business is in located at 1 Caesars Palace Drive, Las Vegas, Nevada. The amount in controversy exceeds $75,000, as Defendant has short-changed its players millions of dollars

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this complaint occurred in Bossier, Louisiana, within this judicial district.

Caesars Entertainment, Inc. may be served with process within this District through its registered agent: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

## Class Definition

3.

The Class that Plaintiff seeks to represent consists of: "all visitors to a casino owned or operated by Defendant between September 23, 2012 and present who were deprived of their change by Defendant."

## FACTS

4.

Defendant is a casino operator. The casino locations it owns or operates are hereafter referred to as the "Casinos." Every day, hundreds of thousands of people enter Defendants' Casinos and gamble. They give the Casino their hard-earned money for a chance to win more money. The concept has existed for hundreds of years and is understood across the globe. The key to this contract of luck is the consistent application of agreed-upon rules and both sides honoring their debts.

The Casinos set the rules, and the players agree to those rules when they change their money, spin the wheel, roll the dice, or ante up. The Casinos are ensured their winnings because the games are operated on a cash-on-the-barrel basis. The players are supposed to be ensured their winnings because the Casinos are highly regulated and follow strict rules in order to preserve the

public trust and their right to operate. The Casinos have broken those widely understood and apparent rules, have violated the public trust, and are liable to the Plaintiffs.

5.

The Casinos have been taxing their players by manipulating the cash-out system employed by their electronic gaming systems (hereafter "Slot Machines").

6.

When a player decides to play a Slot Machine at a Casino, she pays for credits with the machine via either cash or credit card. For example, on a 25-cent machine, a 20-dollar bill will buy 80 credits. By pressing a button or pulling a lever, the player then chances one or more of those credits on the "spin" or chance that the machine generates a winning combination. If the Slot Machine generates a winning combination, the credit count increases, if not, the credit count decreases. The player repeats this process as much as she cares to gamble. Sometimes the player runs out of credit and has essentially lost her money. Other times, for whatever reason, the player decides to cease playing while there are still "credits" on the Slot Machine. That is where the issue herein arises.

7.

A player's decision to cease play before she has lost all of her money is commonly referred to as making the decision to "cash out." Cashing out is the conversion of the Slot Machine credits, back into U.S. dollars.

8.

When a player wishes to cash out, on the overwhelming majority of the Casinos' machines, she presses a button or display marked "Cash Out." In early generations of slot machines, coins would be dispensed at that point. In today's Slot Machines, instead, the machine automatically

generates a Gaming Voucher that reflects and represents the amount owed by the Casino to the player.

9.

The Gaming Vouchers generated by Defendants are all very similar. They bear a scannable barcode, the name of the casino establishment, the dollar amount owed, and several markings used either to instruct the player or assist the Casino in tracking vouchers.

10.

Since the adoption of electronic Slot Machines, these Gaming Vouchers have been used as a convenience for the Casinos; they do not have to stock each machine with cash and can instead stock a few automatic cash-out machines ("Kiosks"). For decades, players would insert a Gaming Voucher into the Kiosk at the Casinos and most other casinos, and the Kiosk would pay them in exact change, in cash.

11.

For the last few years, Defendants have essentially been keeping the change off of hundreds of thousands if not millions of Gaming Vouchers, essentially robbing their customers a few cents at a time, on millions of transactions.

12.

When a player inserted a Gaming Voucher into a Kiosk at some of Defendants' establishments, the Kiosk rounded down to the nearest dollar and paid that amount in cash. The Kiosk then generated a simple Ticket Redemption receipt. That receipt bore the date and time, a casino and terminal code, a sequence number, the amount requested, and the amount dispenses. Unless the Gaming Voucher was for a round dollar amount, the amount dispensed was less than the amount requested. The receipt then glibly recited "Transaction Completed Successfully. The

receipt bore no further direction and left gamers without further option. The Kiosk simply kept the change.

13.

The Casinos failed to put an average player on reasonable notice that Gaming Voucher would be rounded down and that the Kiosk would simply keep a player's change.

14.

On several occasions in 2021, Plaintiff played a slot machine at the Horseshoe Bossier City, a property owned and operated by Defendant.

15.

He inserted his cash into the machine, played for a while and then cashed out. He took his Gaming Voucher to a Kiosk, and it kept his change.

16.

Upon information and belief, Plaintiff is similarly situated with hundreds of thousands of Casino patrons who have been deprived, little by little, of millions of dollars since Defendant's adoption of its no-change policy.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT

17.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

18.

When Plaintiff and Class Members converted their funds into credits, they accepted the offer of the Casino to enter into a contract whereby the Plaintiffs could risk their funds in a game of luck and that at the end of the gaming, the players would be able to cash out their funds.

19.

By keeping a player's change, the Casinos breached this contract, prohibiting the Plaintiff and Class Members from cashing out their gaming credits as originally agreed.

## SECOND CAUSE OF ACTION – CONVERSION

20.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

21.

By depriving Plaintiff and Class Members of a way to exchange their gaming credits for cash, the Casinos took possession of and dominion over Plaintiff and Class Members' property in derogation of their rights.

22.

Plaintiff and Class Members were correspondingly damaged in the amounts converted.

## ALTERNATIVE CAUSE OF ACTION – UNJUST ENRICHMENT

23.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

24.

In the alternative, Defendant was enriched in the amount of the change; Plaintiff and Class Members were correspondingly impoverished, without justification; and no other remedy is available at law.

WHEREFORE, Mike Young prays that summons be issued and served on Defendant, that hearing be set on class certification as required by law, that this matter be certified as a class action, and after due proceedings herein, there be judgment in favor of Plaintiff and all Class Members and against Defendant, including attorney's fees and costs.

Respectfully submitted:

**STERNBERG, NACCARI & WHITE, LLC**

**/s/ Ryan J. Richmond**
Ryan J. Richmond (La. Bar No. 30688)
251 Florida Street, Suite 203
Baton Rouge, LA 70801-1703
Tel. (225) 412-2819
Fax (225) 286-3046
ryan@snw.law

AND

SCOTT L. STERNBERG, La Bar No. 33390
M. SUZANNE MONTERO, La. Bar No. 21361
KEITH J. NACCARI La. Bar No. 36603
GRAHAM H. WILLIAMS, La. Bar No. 36731
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Fax: 504.534.8961
scott@snw.law | suzy@snw.lw | keith@snw.law | graham@snw.law

AND

LAWRENCE J. CENTOLA, III La. Bar No 27402
JASON Z. LANDRY La. Bar No 33932
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
Email:     ljc@mbfirm.com
           jzl@mbfirm.com

*Counsel for Plaintiff*

**PLEASE ISSUE SUMMONS TO:**
Caesars Entertainment, Inc.
Through Its Registered Agent
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, Louisiana 70802