UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MIKE YOUNG, ET AL. | CIVIL ACTION NO. 22-5331 |
| VERSUS | JUDGE DONALD E. WALTER |
| CAESARS ENTERTAINMENT, INC. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court are two motions to dismiss filed by Defendant, Caesars Entertainment, Inc. ("Caesars"). See Record Documents 16 and 19. Plaintiff Mike Young, individually and on behalf of all others similarly situated ("Young"), filed an Amended Complaint in response to the first motion to dismiss and an opposition brief in response to the second motion to dismiss. See Record Documents 18 and 23. For the reasons assigned below, Caesars's first motion to dismiss is **GRANTED** and Caesars's second motion to dismiss is **DENIED AS MOOT.**

### BACKGROUND

Caesars is the ultimate parent company of various subsidiaries which own and/or operate numerous casinos around the country. See Record Documents 19-2 and 18 at ¶ 17. Horseshoe Entertainment, a subsidiary of Caesars, owns and operates Horseshoe Bossier City Hotel and Casino ("Horseshoe Bossier") in Bossier City, Louisiana. See Record Document 18 at ¶¶ 4, 18 n.1. Young alleges that at Caesars's casinos, patrons may gamble using electronic gaming systems ("slot machines"). See id. at ¶ 6. When playing slot machines, a patron pays for credits and if he stops gambling with remaining credits on the slot machine, the machine generates a gaming voucher that reflects the amount owed to the patron. See id. at ¶¶ 7, 9. Patrons insert the gaming vouchers into cash-out kiosks to be paid their balance. See id. at ¶ 11. Young alleges that in many

non-Caesars casinos, cash-out kiosks pay patrons in exact change, but at some of Caesars's casinos, including Horseshoe Bossier, "the Kiosk round[s] down to the nearest dollar and pa[ys] that amount in cash." Id. at ¶¶ 11, 13. Young argues that by dispensing less change than the amount owed to patrons, Caesars has been "keeping the change off of hundreds of thousands if not millions of Gaming Vouchers, essentially robbing [its] customers a few cents at a time, on millions of transactions." Id. at ¶ 12.

Young claims that on several occasions in 2021, he played the slot machines at Horseshoe Bossier, and that when he went to cash out, the kiosk short-changed him by rounding down to the nearest dollar. See id. at ¶¶ 15, 16. Young filed suit in this Court on September 23, 2022, claiming that Caesars's failure to give patrons exact change when they cash out constitutes breach of contract, conversion, and alternatively, unjust enrichment. See id. at ¶¶ 17-24. Young's lawsuit seeks to represent "all visitors to a casino owned or operated by [Caesars] between September 23, 2012 and present who were deprived of their change by [Caesars]." Id. at ¶ 3.

On December 28, 2022, Caesars filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. See Record Document 16. On January 18, 2023, Young filed his First Amended Complaint in lieu of an opposition brief in which he raised an alternative ground for subject matter jurisdiction and added factual allegations. See Record Document 18. On February 1, 2023, Caesars filed a motion to dismiss Young's Amended Complaint, in which it argues that Young's Amended Complaint fails to state a claim for relief. See Record Document 19.

## MOTION TO DISMISS STANDARD

A. <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction. <u>See</u> <u>In re FEMA Trailer Formaldehyde Prods. Liab. Litig.</u>, 668 F.3d 281, 286 (5th Cir. 2012). Motions filed under Federal Rule of Civil Procedure 12(b)(1) challenge the court's exercise of subject matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction always has the burden of proof as to a Rule 12(b)(1) motion to dismiss. <u>See</u> <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001). If the court finds that it lacks subject matter jurisdiction, it must dismiss without prejudice. <u>See id.</u> For this reason, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." <u>Id.</u> (citing <u>Hitt v. City of Pasadena</u>, 561 F.2d 606, 608 (5th Cir. 1977)) (per curiam).

B. <u>Motion to Dismiss for Failure to State a Claim</u>

A motion to dismiss under Rule 12(b)(6) is appropriate when the plaintiff fails to state a legally cognizable claim. <u>See</u> Fed. R. Civ. P. 12(b)(6). The moving party has the burden under a Rule 12(b)(6) motion to dismiss. <u>See</u> <u>Philips N. Am., LLC v. Image Tech. Consulting, LLC</u>, 22-CV-0147, 2022 WL 17168372, at *7 (N.D. Tex. Nov. 21, 2022). In considering a Rule 12(b)(6) motion to dismiss, the district court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff[]." <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting Twombly 550 U.S. at 556, 127 S. Ct. at 1955). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[]n' – 'that the pleader is entitled to relief.'" Id. at 679, 129 S. Ct. at 1937 (quoting Fed. R. Civ. P. 8(a)(2)). Importantly, legal conclusions without factual support are not entitled to the presumption of truth. See Young Conservatives of Tex. Found. v. Univ. of N. Tex., 569 F.Supp.3d 484, 489 (E.D. Tex. 2021).

## ANALYSIS

In its first motion to dismiss, Caesars argues that this Court should dismiss Young's claims for three reasons. First, Caesars argues that this Court does not have subject matter jurisdiction over Young's claims because Young does not meet the amount in controversy required by diversity jurisdiction, which is Young's only asserted ground for subject matter jurisdiction. Second, Caesars argues that even if this Court may exercise subject matter jurisdiction over Young's claims, Caesars is not the proper defendant for this suit because Caesars's subsidiary, not Caesars itself, owns Horseshoe Bossier. Finally, Caesars argues that even if it may be held liable for the acts of its subsidiary, the Court should dismiss Young's claims because Young fails to establish the requisite elements for conversion, breach of contract, or unjust enrichment.

In response to Caesars's first motion to dismiss, Young filed an Amended Complaint which alleges alternative grounds for subject matter jurisdiction – diversity jurisdiction specifically over a class action lawsuit. Additionally, Young filed an opposition brief in response to Caesars's second motion to dismiss in which he argues that Caesars is the proper defendant for this suit. Young acknowledges that while a parent company is generally not liable for the acts of its subsidiary, the Court may pierce the corporate veil in order to impose onto Caesars liability for Horseshoe Entertainment's actions. Young argues that Caesars's subsidiaries are completely

controlled by Caesars, share common board members with Caesars, and that the companies do not observe corporate formalities, all of which allow the Court to pierce the corporate veil. Young also insists that his factual allegations are sufficient to allege the requisite elements for conversion, breach of contract, and unjust enrichment.

A. <u>Subject Matter Jurisdiction</u>

In his Amended Complaint, Young invokes subject matter jurisdiction through diversity jurisdiction. Specifically, Young claims that this Court may exercise diversity jurisdiction over his individual claims pursuant to 28, United States Code, Section 1332(a), and over the claims of the class pursuant to 28, United States Code, Section 1332(d).

A federal court may exercise diversity jurisdiction under Section 1332(a) if the amount in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states. <u>See</u> 28 U.S.C. § 1332(a)(1)-(2). Notably, Section 1332(a) does not permit multiple parties to aggregate their claims to satisfy the $75,000 jurisdictional amount. <u>See</u> <u>Garcia v. Koch Oil Co. of Tex. Inc.</u>, 351 F.3d 636, 639 (5th Cir. 2003) (citing <u>Snyder v. Harris</u>, 394 U.S. 332, 336, 89 S. Ct. 1053 (1969)). Section 1332(d) allows federal courts to exercise jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and in which any member of the class is a citizen of a state different from any defendant. <u>See</u> 28 U.S.C. § 1332(d)(2). Unlike Section 1332(a), Section 1332(d) requires the $5,000,000 jurisdictional amount to be aggregated among the class members. <u>See</u> <u>Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.</u>, 485 F.3d 804, 810 (5th Cir. 2007). When a plaintiff alleges that the amount in controversy requirement under Section 1332 is met, "it [must] appear to a legal certainty that the claim is really for less than the jurisdictional amount" in order for a court to dismiss for lack of

subject-matter jurisdiction." Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995) (internal quotations and citations omitted).

This Court does not have subject matter jurisdiction over Young's claims. Although Young appears to meet Section 1332(a) and (d)'s diversity of citizenship requirements, Young does not meet the requisite amount in controversy under either section. As an initial matter, Young cannot satisfy the jurisdictional amount requirement under Section 1332(a). Young alleges that Horseshoe Bossier short changed him "[o]n several occasions in 2021," and because Horseshoe Bossier's cash-out kiosks round down to the nearest dollar, Young was short changed, at most, $0.99, each of these times. Practically, Young's damages cannot exceed more than a few dollars at most, and because Section 1332(a) does not allow Young to aggregate his damages, Young cannot use the alleged damages from the other members of the class to reach the jurisdictional threshold. Accordingly, Young's allegations are insufficient to allege that he alone suffered $75,000 in damages, exclusive of interest and costs, such that this Court may exercise diversity jurisdiction pursuant to Section 1332(a).

Nor do Young's allegations allow this Court to exercise diversity jurisdiction under Section 1332(d).[1] In an attempt to reach the $5,000,000 jurisdictional threshold, Young alleges that "[Caesars] has short-changed its players millions of dollars" by "keeping the change off of hundreds of thousands if not millions of [g]aming [v]ouchers." Record Document 18 at 2, 6. However, given that each gaming voucher is worth $0.99 at most, there would need to be at least

---

[1] Caesars does not dispute that the Court may exercise subject matter jurisdiction under Section 1332(d). However, "[f]ederal courts have an affirmative duty to examine sua sponte the basis for subject matter jurisdiction" and, thus, the Court independently addresses whether it may exercise subject matter jurisdiction pursuant to Section 1332(d). Contreras v. Wilson, No. 22-CV-4015, 2023 WL 1998036, at *2 (S.D. Tex. Jan. 17, 2023) (citing Union Planters Bank Nat. Ass'n v. Salih, 369 F.3d 457, 460 (5th Cir. 2004)).

6

5,050,506 gaming vouchers at issue in this case to satisfy Section 1332(d)'s amount in controversy requirement. See 28 U.S.C. § 1332(d)(2). And importantly, this number would only be sufficient if every gaming voucher was valued at $0.99. The Court does not interpret Young's vague allegation that there are "hundreds of thousands if not millions" of gaming vouchers at issue to mean that there are more than five million gaming vouchers, all valued at $0.99, at issue. Moreover, even if this is what Young intended to assert, the Court does not find this remotely plausible. See, e.g., Scherer v. MGM Resorts Int'l, No. 22-CV-258, 2023 WL 2776675, at *10 (S.D. Miss. Apr. 4, 2023) (finding it legally certain that plaintiff's claim that the casino short changed "hundreds of thousands" of patrons did not allow plaintiff to reach the $5,000,000 amount in controversy required under Section 1332(d)). Young fails to establish that the amount in controversy in this case exceeds $5,000,000, exclusive of interests and costs. Accordingly, because the Court lacks subject matter jurisdiction over this matter, Young's claims are **DISMISSED WITHOUT PREJUDICE**.

  B. <u>Whether Caesars Is the Proper Defendant</u>

  Out of an abundance of caution, even if this Court had subject matter jurisdiction, it would dismiss Young's claims because Caesars cannot be held liable for Horseshoe Entertainment's alleged conduct. It is well established that generally, a parent company may not be held liable for the acts of its subsidiaries. See <u>Ames v. Ohle</u>, 2016-0612, p. 14 (La. App. 4 Cir. 4/26/17); 219 So.3d 396, 406. However, in limited circumstances, a litigant may reach a parent company by piercing the corporate veil, thereby rending the parent company liable for its subsidiary's actions. See, e.g., <u>Andry v. Murphy Oil, USA, Inc.</u>, 2005-0126, p. 15 (La. App. 4 Cir. 6/14/06); 935 So.2d

239, 249-50. In determining whether to pierce the corporate veil, Delaware courts[2] consider a number of factors, including: (1) undercapitalization; (2) insolvency; (3) whether corporate formalities were observed; (4) siphoning of company funds; and (5) whether one company functioned as a facade for the other. See Manichaean Cap., LLC v. Exela Tech., Inc., 251 A.3d 694, 706 (Del. Ch. 2021). None of these factors are determinative and "[a]n ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to an overall element of injustice or unfairness." See id. at 706-07 (internal citations and quotations omitted); see also BASF Corp. v. POSM II Props. P'ship, L.P., No. 3608, 2009 WL 522721, at *8 n.50 (Del. Ch. Dec. 9, 2008) ("To pierce the corporate veil, a plaintiff must show that the interests of justice require it because matters like fraud, public wrong, or contravention of law are involved.") (citing Pauley Petroleum, Inc. v. Cont'l Oil Co., 239 A.2d 629, 623 (Del. 1968)). Notably, "Delaware public policy disfavors disregarding the separate legal existence of business entities," and courts generally do so only in "exceptional case[s]." Id. at 706; see also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1183 (Del. Ch. 1999) (internal citations and quotations omitted).

---

[2] "As a general rule, a federal district court sitting in a diversity case has the obligation to apply the law of the forum state." Owl & Turtle, Inc. v. Travelers Indem. Co., 554 F.2d 196, 197 (5th Cir. 1977) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938)). Here, the forum state is Louisiana and as Caesars points out, in "Louisiana choice-of-law decisions, . . . 'the law of the state of incorporation applies in determining whether it is appropriate to pierce the corporate veil.'" Energy Coal v. CITGO Petroleum Corp., 836 F.3d 457, 462 (5th Cir. 2016) (quoting Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 646-47 (5th Cir. 2002)). Caesars is incorporated in Delaware and, thus, the Court looks to Delaware law to determine whether it is appropriate to pierce the corporate veil.

Young's Amended Complaint, when considered as a whole, does not raise allegations which allow the Court to pierce the corporate veil. In his Amended Complaint, Young alleges the following in an attempt to impute liability onto Caesars:

(1) The practices adopted by the Casinos are directed by [Caesars] through a chain of pass-through entities;

(2) [Caesars] exercises ultimate dominion and control over the Casinos, makes public filings which represent ultimate control over them, and holds out to the public that the Casinos are ultimately owned and controlled by [Caesars];

(3) [Caesars] . . . operates an estimated 25 casinos nationwide in 16 states. All of these properties fall under and are marketed by Caesars on the www.caesars.com website.

(4) Caesars offers a rewards/loyalty program to its patrons known as Caesars Rewards®. Participating patrons are issued a Caesars Rewards® Card that is accepted at and transferable to all Caesars . . . Casinos nationwide . . . .

Record Document 18 at ¶¶ 17-19. These allegations are not sufficient to plausibly show that Horseshoe Entertainment lacks a separate legal identity from Caesars or "functions as a facade" for it. Young does not allege that Horseshoe Entertainment is inadequately capitalized, insolvent, or "siphoned company funds" from Caesars. At most, Young attempts to allege through several completely conclusory allegations that Caesars exercises complete control and dominion over Horseshoe Entertainment. However, "[m]ere control or even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity." Skouras v. Admiralty Enter., Inc., 386 A.2d 674, 681 (Del. Ch. 1978) (citations omitted).[3] Id. Moreover,

---

[3] Young also attempts to allege in his opposition that Horseshoe Bossier and Caesars share common board members. However, this allegation was not raised in Young's Amended Complaint and, thus, the Court does not consider it. See Pullins v. Hancock Whitney Bank, 512 F.Supp.3d 647, 654 (M.D. La. 2021) ("[T]he Court must only consider the allegations in Plaintiff's Amended Complaint and not additional allegations raised for the first time in [his] opposition.") (emphasis omitted). However, even if the Court were to consider Young's improperly raised allegation, the fact that two companies share officers or directors "is insufficient to pierce the corporate veil." La Chemise Lacoste v. Gen'l Mills, Inc., 53 F.R.D. 596, 603 (D. Del. 1971).

9

Young does not allege facts which plausibly show "an overall element of injustice or unfairness." Manichaean, 251 A.3d at 706-07. Although Young points to the alleged conversion to make this showing, the underlying cause of action cannot be the basis for corporate fraud or injustice. See Mobil Oil Corp. v. Linear Films, Inc., 718 F.Supp. 260, 268-69 (D. Del. 1989) ("The underlying cause of action does not supply the necessary fraud or injustice . . . . The law requires that fraud or injustice be found in the defendants' use of the corporate form."); see also Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc., 685 A.2d 724, 729 (Del. 1996). In short, Young fails to allege anything more than a parent/subsidiary relationship. There are no facts which plausibly support a finding that Horseshoe Entertainment and Caesars constitute the same corporate identity, nor does Young allege any facts that could plausibly indicate corporate fraud, injustice, or unfairness.[4] For these reasons, even if the Court could exercise subject matter jurisdiction over this suit, it would dismiss Young's claims because Caesars is not the proper defendant for this action.

A. Motion to Amend

At the close of his opposition brief, Young requests that if the Court deems the Amended Complaint insufficient, the Court allow Young the opportunity to amend in lieu of dismissal. However, Young's request for amendment is insufficient. While a formal motion to amend is not required, the party seeking to amend must "set forth with particularity the grounds for the amendment and the relief sought." Ex rel Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 387 (5th Cir. 2003) (internal citations omitted). Young has not done so here and, thus, his "bare request . . . without any indication of the particular grounds on which the amendment is

---

[4] Given the Court's analysis supra, it is unnecessary to consider the merits of Young's claims for conversion, breach of contract, and/or unjust enrichment.

sought . . . does not constitute a motion within the contemplation of Rule 15(a)." See id. (internal quotations and citations omitted). Accordingly, Young's request for amendment is **DENIED**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Caesars's first motion to dismiss (Record Document 16) is **GRANTED**. Young's claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Caesars's second motion to dismiss (Record Document 19) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Young's request for amendment is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 5 day of May, 2023.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　DONALD E. WALTER
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE